here at the podium, please speak up loudly so that this recording device can pick up what you're saying. It doesn't magnify your voice, so please keep your voice up. We normally give each side 15 minutes, but because we don't have a heavy schedule, if you go a little over, we're not going to have a fit. So make sure that when you are at the podium that you identify yourself. Thank you. Can you call the first case for us? Case number 12-2948, Thomas Golly v. NPD. Good morning, Your Honor, and Your Honors. May it please the Court, my name is Kevin Todd, TODD, and I represent Thomas Golly, who is the petition in this case because it didn't properly consider and take into account four cardinal facts that distinguish this case and make it very different from any other case that we've found in the appellate or Supreme Court cases here in Illinois, and did not read the allegations or the facts in this case in light of those four significant facts. What I'm referring to, Your Honors, is that what's unusual about this case is that you've got the defendant, Clint Eastman, who divulged ahead of time a plan to undo the will of the decedent, Richard D. Mateo, and then went ahead and implemented this plan, which was witnessed, which is alleged, and we have allegations that in response to this plan, in response to these misrepresentations, these character attacks upon Thomas Golly, the decedent said that he would write out Thomas Golly and that he would provide for, give money to, Clint Eastman. And then after that, after Mr. D. Mateo passes away, Clint Eastman is heard bragging that he had accomplished this. So no other case that we've been able to find has such a set of facts against which all the other allegations must be withdrawn. So those four facts are a backdrop and I think undergird the facts and the inferences that must be drawn in this case. So the first of those facts is that Clint Eastman conceived a plan of how he was going to overturn Richard D. Mateo's will and cause the disinheritance of Thomas Golly. And he did this with a decedent who was understood to be, by Clint Eastman, paranoid, physically and emotionally, psychologically weakened, and in a vulnerable state. So he conceived of a plan that would be calculated to be effective upon somebody in that situation. And those are the facts. And he asked about as to how to change the will of another person. And all of this has been witnessed. He asked how to change the will of someone else. He did this ahead of time as he was explaining the plan that he was going to use to effect the disinheritance. This complaint was two causes of action, Your Honor. One is undue influence. And the second is tortuous interference with the testamentary expectancy. And in those two causes of action that you allege, what's your best case? The best precedential case? Yeah. I believe the DeHart case, which is the most instructive here, is it not? I believe it is, Your Honor. Okay. And then there's also a couple of other cases that I think we've cited. Hoover, Sterling? I'm sorry? Hoover and Sterling? Hoover, Sterling. Then also the Swenson versus Wintercourt case, which includes a discussion that in an if all the other facts and circumstances are supportive of there being undue influence in the case. And in this case, Judge, where you've got someone who declares ahead of time that they're going to seek to undo the will of another and then makes the statements in the presence of the I'm going to write out Thomas Golley. And then days later, he in fact does so. Those facts, we argue, and I think at this stage of the proceedings, when you're looking at a 2615 motion to dismiss, must be viewed as warranting the case to go forward. And in not allowing the case to go forward, we believe the trial court heard. So I've already addressed somewhat what these facts are. The first one was he concedes the plan. He announces the plan. He asks how to change the will. Asks if he can go to jail for doing this. And then secondly, he goes about implementing that plan, pre-announced, by lying to the testator about Thomas Golley. That he wasn't paying him for doing his work. That his family, as a result, was suffering hardship. And portraying Thomas Golley as not somebody worthy of bounty, but instead somebody who's greedy and exploitive. And so what this was calculated to do was portray Clint Eastman as pitiable, worthy of bounty, and at the same time mischaracterize Thomas Golley as being unworthy of the decedent's bounty. So then he goes ahead and implements the scheme. He does that. The allegations are in the complaint, in the amended petition, that he did so on multiple occasions. The one that I'm focusing on is on March 26, 2011. This is the incident out at Mr. DiMatteo's farm where Clint Eastman shows up with the decedent who is so weak he can't even stand up when he gets out of the truck. He falls down. At that time, Clint Eastman makes these misstatements with respect to Thomas Golley. And then Mr. DiMatteo's response to that is anger and a statement that he will write out Thomas Golley from his will. And then, as we've indicated, he does so days later. So unlike certain of these cases that I relied on by Mr. Eastman, this is not a case where we have to wonder what is the quantum of influence which would be effective in causing the misrepresentation. In response to the statements, the decedent said, I'm going to write out Thomas Golley. Mystery completely dispelled. And then not only did he say it, he did it. So that is, those are facts that support that the misstatements, that the misrepresentations operated upon the decedent. What about your opponent's argument that Mr. Golley didn't specifically say that Mr. Eastman knew about the will? Isn't that significant? That, I believe, Your Honor, as we pointed out in the reply, is a mischaracterization of the record. How is that? Because there are allegations in the complaint that, in fact, Mr. Eastman knew of the will. Those allegations are in the complaint, and I can cite you to paragraph if that would be helpful. Well, you have in the complaint that he wanted to change the will so he knew there was a will. Exactly right. If you want to change something, you've got to know there's something to change. Exactly right, Your Honor. And it would make no sense for Mr. Eastman to be attacking the character of Thomas Golley in order to decedent if Thomas Golley weren't the beneficiary under that existing will. So it's a misstatement that there are no allegations that Mr. Eastman knew of the will. And Your Honor is correct in, I think, implying or inferring that that's an element of a tortious interference claim. And like the other elements of a tortious interference claim, they're met in this case. And then, so we've got conception of plan, announcement of plan, implementation of plan, response to plan by the decedent. And then after Mr. DiMatteo passes away, we've got the statement by Mr. Eastman that he was bragging about how his scheme had been successful and he had received the estate of Mr. Eastman. These facts at this stage must be viewed in the light most favorable to Thomas Golley. And as DeHart indicates, a complaint should only be dismissed if there is, if it's clearly apparent that no set of facts can be made out to support the plaintiff's claim. In this case, where you've got those four points that I just pointed out in our brief and to the Court here, it's error to say that it would be, that there's no scenario in which the plaintiff would be able to make out a case when those four propositions are so clearly alleged. And in fact, there's no case that we're aware of. There's certainly no case cited by Mr. Eastman that would counter that. In none of the cases, motion to the Court, there's no scenario in which you have an announced plan, an implemented plan, an acknowledgement of the plan, that being dismissed at the pretrial stage. I'm sorry, if you want to save a couple of minutes. I'm sorry? I would like to save a couple of minutes for rebuttal. Yes, I agree. Just one further point. This is not an honest persuasion case. Mr. Eastman talks about if one honestly seeks to persuade, that's fair game. You can do that. It even goes so far as to say you can misrepresent the lie in the context of doing that. This isn't an honest persuasion case. This is a dishonest overcoming of the decedent's intention case. I will at this point reserve the balance of my time for rebuttal. Thank you. Good morning. I'm Don Thompson. I am the attorney for the defendant, Eppley. Counsel, I'm just going to ask you to keep your voice up a little bit. Do you want me to speak louder? A little bit, yes, please. Okay. I will try to speak louder. I'm not a very loud speaker to begin with, but there are no other cases showing this is okay because nobody questions the fact that, one, you can ask somebody to make a will in your favor, and you can get it done, and you can brag that you got it done later, and that's not undue influence. DeHart is not new. The new thing in DeHart was equitable adoption, not the principles of undue influence. As a matter of fact, DeHart involved a testator who lacked mental capacity. That invalidates the will right there. It involved presumptive undue influence. There was a power of attorney. The lady was managing the guy's property, and the other elements of presumption were present. Then they went on to quote language from Hoover. Well, isn't the allegation here that Mr. DiMatteo was paranoid and physically impaired as well? Pardon? I said, isn't the allegation here that Mr. DiMatteo was similarly paranoid? In other words, his mental capacity was impaired in addition to being physically impaired. No, there's no allegation here that he lacked mental capacity to make a will. In DeHart, that's the grounds for invalidating a will if you meet certain standards. And in DeHart, those standards are met. Here they say he was enfeebled, he was dying, and he was paranoid. But they make no charge that he lacked mental capacity to make a will. He was paranoid, but not mentally. Right. But in regard to that, may I ask you this as a rhetorical question, not that you should answer by questions. I promise I won't. If the decedent was paranoid and willing to believe the worst about people, why didn't he believe the worst about the defendant? You see what your argument is doing is this. You're talking about evidence. No, I'm not, Your Honor. I'm talking about reasonable inferences from the evidence. I don't want to get into that now. Let me just start with what the law is. Well, we kind of know what the law is. Okay. But the law requires a wrong act. The law requires a new will. And the law requires that you show how the wrong act created the new will, not just causation, but you have to show the testator's will was overcome. And in all the cases they're citing, you don't just show a misrepresentation. You have to show something more than that. Now, what happened here? You have somebody who the testator barely knew at the time he made his new will. He met the guy March 12th. March 16th, this guy is back up in Minnesota telling somebody, I want to know how to change somebody's will, and I have told him that I'm not being paid by the plaintiff. March 26th, they say this all has an effect on the plaintiff. Two weeks, the will is under influence. Two more weeks, the will is done. This plaintiff is the trusted friend of the decision. Let me ask you this question. You just told us that, you know, a false or misleading representation, that you need more than that. You know, in Hoover, the Illinois Supreme Court said false or misleading representations concerning the character of another may be so connected with the execution of the will that the allegation that such misrepresentations were made to the testator may present triable questions on the issue of undue influence. Correct. It said may. Now, look at all the cases. It said may, of course. Yeah, may. Look at all the cases. And this is a complaint. This is not summary judgment motion. He only has to allege it. He doesn't have to prove it. Right. He doesn't have to prove it, but he has to allege things. And all the things alleged in DeHart and Hoover and the other cases were more than one misrepresentation. Now, let's look at what's true here. What's true is what he alleges and the reasonable inferences. We have to show not that there was just a misrepresentation, but that operated on the guy to get his will changed. I can make a valid will if somebody lies to me and there's no undue influence just because he lied to me. I might have made that will for other reasons. Counsel, can I just interrupt you for a second? If the complaint says your client says I'm being treated so badly by this guy, this guy is not paying me, he's greedy, he's got plenty of money, he doesn't need the money, and poor me, I do need the money, and the other guy immediately responds, I'm going to cut him out, isn't that in the undue influence? I mean, he's trying to get himself in and kick the other person out. No, that didn't happen. All these allegations about character attacks, he's greedy, this is not alleged. These are conclusions. But he said he didn't pay me. That's all that's alleged. He didn't pay me. I need the money. He doesn't. My family's suffering. The will isn't even mentioned. He mentions the will to a third party, but he doesn't mention it to the decedent. And he says these things March 16th. By March 16th, he's telling somebody else he's already told it to the decedent. This is not March 26th when the decedent says I'm going to write him out. When the decedent says I'm going to write him out, the decedent first says, he doesn't say I'm going to write him out of the will. The decedent first says I've been relying on this guy to handle my affairs, and there's a power of attorney. And he says I'm going to write him out. And then he tells the guy I'm going to see that you get your money. All he's saying is I wasn't paid for my work. He's not saying, you know, I should get everything you have. By the way, there's also something else in this record. I didn't notice it when writing the brief, but in preparing for oral, I did. The guy filed a claim against the estate. In it, he said the decedent left him. The guy? Pardon? Be more specific. Is that part of the record of this case? It's in the record. What? It's C- Who is the guy? 38-32. Are you saying Eastman or? Who is the guy? Mr. Galley, the plaintiff, filed a claim against the estate, and he said the decedent gave him over $100,000 of cash and securities, $124,000, mostly cash. He says this occurred in May 2011. The will he's challenging was in April 2011. This is part of the record. This is his statement. This does not sound like the defendant turned the decedent against Mr. Galley. What we have here is two weeks, complete undue influence exercise. I think the reasonable inference is, by the way, the decedent, on March 26, the decedent comes to his land. He finds a trespasser there. He says he's got defendant with him. He says, what are you doing here? Defendant says to the trespasser, don't tell him. So right away, decedent decides to give all his money to the paranoid decedent, decides to give all his money to this guy. The reasonable inference is not that that caused the guy, that misrepresentation caused the guy to make his will. The reasonable inference, there is a new will here. That doesn't prove undue influence. The reasonable inference is it was due to something else that's not explained in the complaint. See, here's the problem. The problem is that under the law, we have to take the allegations of the plaintiff as true. And your arguments really talk about evidence. And if this was a summary judgment motion, it may be a whole different ballgame. But this is not a summary judgment situation. This is just that the plaintiff has to allege a cause of action. And you're talking about, you're using the word reasonable inferences, but you're talking about evidence. It's like taking this pencil and calling it an elephant. It's still a pencil. Right, Your Honor. But he has to allege facts stating a cause of action. And the cases are in the brief showing, and including Gart, he has to allege facts showing how the misrepresentation overcame the free will of the testator. That has to be inferred from what he's alleging. He's not really alleging anything that would do it. He said, I'm going to write them out. You know, under the circumstances, that's very equivocal. And he has the burden of alleging the facts, especially when the guy has just told the trespasser, don't answer him. And it's also alleged that he asked the trespasser to help him with his lie, and the trespasser says, no, it's not true. Are you telling me I'm done? No, sir. I was going to say something about the trespasser, but I'm just like, it will be in the opinion. Well, the guy is on the land. And he has no permission to be there from the owner. He essentially is there to take things off the land. I call him a trespasser. Whatever you want to call him, the decedent says, why are you here on his land? And the defendant says, don't tell him. I'm not arguing the facts. I'm taking the facts as true. And I'm taking the reasonable inferences from the facts. But to take the facts alleged and say they state a cause of action, you have to infer things. You're only entitled to the reasonable inferences. And it is not reasonable to conclude from what is alleged that the statement, the guy isn't paying me, caused this new will. It's not reasonable to infer that that overcame the decedent's free will and his independence of action. And I have one other question to you, one thing that wasn't covered. And that's this. Under DeHart, there's a presumption of undue influence under certain circumstances. And one of those circumstances would be where a testator places his trust and confidence in the beneficiary. Yes. That's what's kind of alleged here. Now, in their briefs, they say they're proceeding on that. By the way, as to causation, they explain what the causation is. Because of the fiduciary relationship. No, I didn't say fiduciary relationship. Well, no, you did. I didn't say that. I'm talking about where the testator places his trust and confidence in the beneficiary. Correct. The presumptive elements, according to DeHart, are, one, there has to be a fiduciary relationship. Trust and confidence is a separate one of the four items. There has to be dependent, dominant. I'm only concerned with the third item. When a testator places his trust and confidence in the beneficiary, there's a presumption. And if there's a presumption under the set of facts that is set forth in this complaint, I don't know how that could not be a cause of action. But there are no facts alleged to show this trust. He barely knew the guy. That's all the facts that are alleged to say there was trust there. That is stated in the complaint. That is a conclusion. Conclusions are drawn from facts. But there are no facts there. He, you know, barely knew the guy. There's nothing to show he was trusting him. There's nothing to show the defendant was acting. Oh, you mean he just gave him all his property and he didn't have any trust and confidence in him? No. Are we to believe that? To say that that's another thing they say. You give the guy your property. You show the trust. That's not what the cases show. They don't show in an undue influence case that you can presume the trust from the gift. Who knows why this guy gave the property there? Now, there is a reason. But this, the facts in this complaint don't show it. They show that he wasn't a dadonic. They give rise to the reasonable inference that something else explains what happened here. Now, whatever that is is outside the documents here. But trust and confidence? There's nothing alleged to show that the testator trusted the guy. Yeah, he gave him the stuff. Does that mean that everybody you give something to is somebody you trust? You give things to your kids all the time when you don't trust them to tell you the right time of day. You give them to third people who lie to you. Bet you like them. You wouldn't trust them, you know, to walk down the street. But if there is trust, nothing is alleged here to show it. He barely knew the guy. That's what's alleged. And at the time he made the will. That's alleged. It was occurring at the time he made the will. Cass, you just have a couple more minutes here. Well, I think I can't emphasize enough that besides the wrong thing, besides new will, new will doesn't prove undue influence. Besides saying make a will for me, you've got to show how the testator's will was overcome. The facts alleged here and the reasonable inferences from them do not show that. They just make you wonder what happened here. How could this testator have possibly left everything he had to this guy, considering what he did? There are conclusions. There are all sorts of disparaging statements and character defamation and all that, but they don't tell us what the statements are. The only statements they tell us are, he said, the guy's not paying me. Does that get you everything? The other statement is. He also alleged, I hate to interrupt you, I didn't mean to do it, but he also alleges that he said, how do you change your will? And will I get in trouble? Can I get in trouble? Yes. For doing it. But he alleges he said that to somebody else. Now, remember. Which kind of goes to his intent. Right. Now, if I. And the wrongful intent. That doesn't go to wrongful intent. I'm entitled to somebody's will change. That's a debate. I'm entitled to get somebody's will change. The wrongfulness would be in the misstatement, the lie. And that does not. I'm talking about his thinking in his mind that, will I get in trouble? Basically, am I going to commit a crime by trying to get him to change? Fine. That's not what's at stake here. What's at stake here is what he told the decedent, does that show that the decedent's will was overcome under the circumstances? Remember, and they say, well, there's a fiduciary relationship, so that's how it was overcome. But there is no fiduciary relationship alleged here. The defendant was not doing anything for the decedent. He wasn't obligated to. They say he trusted, but they don't show any facts showing trust. It's just you wouldn't give anything to this guy under what's alleged here. Nobody would. It's not a reasonable inference to assume that they would. And all these things about his intentions, his schemes, get rid of that. They've got alleged facts, and the facts alleged don't reasonably show that the guy's will was overcome or that if it was, he would give him everything instead of what was paid. And, by the way, if you're not paid and I have sympathy with you, why do I have to pay? It's just, and I'm not arguing the facts. I'm talking about what is a reasonable inference from. They're drawing inferences that aren't reasonable, and they contradict themselves. By the way, in that claim they filed. I'm going to have to ask you to stop in one minute. In that claim they filed, in the will contest, they said that plaintiffs let the decedent stay for free in a house. They filed a claim for rent on that house. So I am done. Thank you. Thank you. Counsel, you just have a minute. It's all right. They pay me the same no matter what. Okay. So what we know is that Mr. Thompson wouldn't have given any money to Clint Eastman. That's irrelevant. But what we do know is that in this case, in response to the misrepresentations of Clint Eastman, that's what the decedent said he was going to do. So the how question and the who knows questions are answered. There are allegations in the complaint to establish trust, confidence, and the rapidity with which the decedent acted. All of that, again, is against the backdrop of his paranoia. Justice Gordon, my notes were the same. He was arguing the case in which DeHart contemplates that scenario. DeHart was a motion to dismiss case, and the Supreme Court said this is enough to prevail against a motion to dismiss. At some point in time, you know, different standards apply. It might be a different result. But in the face of a motion to dismiss, the trial court erred in granting that motion. Nothing further, Your Honors. I mean, we rest on what we've submitted. If the court has any additional questions, I'm happy to take those. Otherwise, we'll rest. Thanks very much. Thank you. Interesting case, and we will take the case under advisement. I don't know if the clerk's over there, but we're going to stand adjourned. Thank you. Good to see you again.